## G. W. LONG v. EAVES & COMPANY.

[56 South. 178.]

SPECULATIVE CONTRACTS. *Reformation.*

A contract for the sale of two hundred bales of cotton to be delivered
two months hence at a certain price is not speculative in the sense
that such contracts are condemned by law and a court of equity is
not warranted in refusing to reform such a contract for fraud and
enforcing it as reformed.

APPEAL from the chancery court of Lee county.

HON. J. Q. ROBBINS, Chancellor.

Suit by G. W. Long against Eaves & Co. From a de-
cree dismissing the bill, plaintiff appeals.

The facts are as follows:

Appellant entered into the following contract with ap-
pellees: "Tupelo, Miss., Nov. 2, 1907. Mr. G. W. Long,
Tupelo, Miss.—Dear Sir: We beg to confirm sale to
you to-day of two hundred bales of cotton (200 B|C)
for January delivery in Tupelo, Miss., at (10½) ten and
one-half cents per pound, basis Middling with one-eighth
cent differences above and below. Yours very truly.
[Signed] Eaves & Co., G. W. Long.

Eaves & Co. is a partnership composed of J. H. Eaves
and S. B. Hinds, and is engaged in the purchase and sale
of spot cotton. Appellant is not a cotton man, nor is
he familiar with the terms of the trade The trade be-
tween appellant and appellees was concluded by Hinds.
with full information obtained from Eaves, who dictated
the contract, which was in due time executed by Hinds
and Long. Appellant inquired of Hinds if this contract
called for delivery of middling cotton and was advised
that it did, and relied upon the representations of Hinds
in regard to the entire transaction. Appellees did not

deliver middling cotton, but tendered some cotton which was below middling, which was refused by appellant.

Appellant thereafter filed a bill in chancery, setting up the facts and alleging fraud on the part of appellees, and seeking a recovery of one thousand, two hundred dollars, being the profit which he could have made out of a resale of the cotton, had middling cotton been delivered by appellees at the price stipulated in the agreement. The chancellor found that the appellees had perpetrated fraud, but dismissed appellant's bill for the reason set out in his opinion, which is as follows:

"I have given this case repeated consideration. I have frequently read and reread this evidence. From this evidence, I believe this contract most unconscionable. I believe the evidence shows that the defendants "put up a job," in the language of the street, on the complainant. The evidence shows that one of the defendants purposely and intentionally, so as to make it a one-sided contract—"heads I win, tails you lose."

"The evidence shows that the other defendant knew of this; knew that his partner had prepared the loaded dice, and still insisted on playing the game with this loaded dice. He induced Mr. Long, his friend, to sign this one-sided contract, when he knew that Long did not understand the effect of the contract, and when he knew that Long was relying upon and trusting him. I think that under the circumstances Long had the right to inquire of Mr. Hinds about the effect of the contract, and had the right to rely upon his statement. But Long's confidence was misplaced; this friend did not act square with him, but, on the contrary, deceived him as to the effect of the contract.

"If this contract had been made, as complainant understood it, he would have made about one thousand, two hundred dollars. As it turns out, he makes nothing. If the contract is interpreted as it is written, he should get nothing.

"If the market had gone against complainant and this were an effort to force him to comply with the contract, I would not hesitate under this evidence to declare the contract fraudulent, and that it could not be enforced.

"On the other hand, the complainant has lost nothing but some profit he would have made, if the contract had been written as he understood the deal. He seeks to reform and enforce the contract in accordance with what he conceives to have been the true contract, and with what the evidence in fact shows that he understood. The deal, although relating to spot cotton, was really and in fact a speculative venture. The contract was so drawn that it mattered little to defendants whether the market went up or down; they would not lose. But as it turned out the complainant failed to make some profits that he should have made.

"Does that present a case for equitable relief? I think the evidence shows the transaction a pure speculation, and his loss is purely speculative, and not real. Courts of equity will not uphold, nor sustain, nor approve such an unconscionable contract as this is shown to be, and would grant relief to prevent its enforcement. But it does not follow that equity should reform and enforce this contract for the benefit of him who was imposed on and deceived into making the contract, and grant him damages for the profits he would have made. If it be a speculative venture, pure and simple, equity will simply leave the parties where they are without relief.

"I confess that I do not like for such a transparent fraud as this contract was to pass through my court, without a more substantial condemnation than mere words; but I feel so sure of the correctness of the position that equity should and will not enforce purely speculative ventures that I must not allow my antipathy to fraud to lead me into a violation of other sound and well-established principles of equity.

"The bill will be dismissed."

*C. P. Long,* for appellant.

No written contract is beyond the reach of a court of equity for the purpose of reforming it, if the prayer for relief is timely presented. *Palmer* v. *Hartford Ins. Co.,* 54 Conn. 488.

In the present case, it is not contended that there was any mutual mistake between the parties, but that there was a mistake on the part of the appellant caused by the fraud and misrepresentations of the appellees and the willful, palpable fraud and misrepresentations on their part. The court has found such to be the case, and that the instrument or contract was not written on account of this fraud and misrepresentations according to the contract of the parties. Where this state of affairs exists, it is not necessary to prove a mutual mistake, but the party guilty of the fraud and misrepresentation, where the testimony shows what the true contract was, is estopped to take advantage of his own wrongs.

In other words, so far as the oral requirements are concerned, there was an agreement or meeting of minds, and each party understood the contract exactly alike, but the fraud was in the preparation of the written contract by appellees. Under the agreement it was the duty of appellees to prepare the written contract exactly as they and appellant had traded.

"If one whose duty it is to prepare a written contract, according to a previous agreement, by changing its terms and delivering it as in accordance with such agreement, prepares one materially different from the agreement, he commits a fraud which entitles the deceived party to a reformation." —— v. *Freeman,* 99 Ga. 376; *McDonald* v. *Youngbluth,* 46 Fed. Rep. 836; *Hay* v. *Star Fire Ins. Co.,* 77 N. Y. 235; *Bergen* v. *Ebey,* 88 Ill. 269.

"If stipulations are kept out of a contract by fraud, the contract may be reformed in equity and specifically enforced." *Cubberly* v. *Cubberly,* 39 N. J. Eq. 514.

"Equity may reform a deed for fraud, notwithstanding the plaintiff's negligence." *Hitchens* v. *Pettingill,* 58 N. H. 3.

"A court of equity may reform a bill of sale of a vessel to allow its registry and enrollment under the laws of the United States." *Sprague* v. *Thurber,* 17 R. I. 454.

"An ordinary contract for the sale of merchandise may be reformed where the negligence of the defendant in signing the contract was not so gross as to bar him of the right of reformation on the ground of fraud and mistake." *Sutton* v. *Risser,* 104 Ia. ·631.

"If there has been mistakes or fraud in the giving of a note, it may be reformed, in equity, according to the general principles above mentioned, to conform to the actual agreement between the parties." *Miller* v. *McCarty,* 47 Minn. 321; 28 Am. St. Rep. 375; *Kropp* v. *Kropp,* 97 Wis. 137; *Lee* v. *Percival,* 85 Ia. 639; *Loudermilk* v. *Loudermilk,* 98 Ga. 780.

"Equity will relieve against a mistake, either of law or of fact, where it is produced by misleading statements or misrepresentations of the other party to the contract." *Lott* v. *Kaiser,* 61 Tex. 665; *Bales* v. *Hunt,* 77 Ind. 355-360; *Snell* v. *Ins. Co.,* 98 U. S. 85.

"A mistake of law as to a contract, caused by fraud, imposition, or misrepresentation, may be relieved against in equity." *Kyle* v. *Bebley,* 81 Wis. 67; *Bush* v. *Merriman,* 87 Mich. 260.

"If one party to a contract is mistaken, either as to law or fact, and the other, with knowledge, contracts with him, equity will relieve upon the ground of fraud." *State* v. *Paup,* 13 Ark. 129; *Weaver* v. *Van Aiken,* 71 Mich. 77.

"The latter having such knowledge, and remaining silent when he should speak, is estopped to defeat a reformation by asserting a want of mutuality in the mistake." *Roszell* v. *Roszell,* 109 Ind. 354.

"An omission or error in a contract, caused by fraud or mistake, will be reformed." *Smith* v. *Burk,* 14 Cal. 75; *Parker* v. *Schaller Bank,* 98 Ia. 246.

The chancellor says: "Complainant lost nothing but a profit. He would have made, had the contract been written as was agreed upon, about twelve hundred dollars." He certainly lost this, and it was a thing he was entitled to. If he had bought a piece of land for the purpose of re-selling it, and paid nothing down on it, or any other kind of property in the same way, all he would have been out would be the profit that he could sell it for more than he agreed to pay for it. I know of no rule that requires possession to be given, or money to be paid, before the contract can be reformed. The fact is, if either one of these things had occurred, there would have been no use for a written contract whatever. If this is the law a scoundrel can make any kind of agreement that he feels like, promise anything, agree to anything, write the contract to suit himself, inveigle the other party into signing it, and if the thing turns out to the disadvantage of the honest man, in ninety-nine times out of a hundred, he will perform the contract, but if to the disadvantage of the scoundrel, he will not and cannot be made to do so. It would seem to me that the promise of the innocent party to perform the contract, his reliance thereon, his intention to do so, and the probability that he would do so if he looses, instead of the party who had perpetrated the fraud on him, is a sufficient consideration, even if one was needed in order to reform the contract.

It is the boast of equity, that it rises to furnish relief in cases where rights exist, where the law furnishes no remedy, and if there is no remedy for appellant in chancery in this case, the opportune time is here for a moulding process. The time has not arrived when scoundrels and thugs can pursue their calling, with no care except to stay on the right side of the prison lines.

*Mitchell & Clayton,* for appellee.

Since the chancellor has found that the contract was.
purely speculaive, does the record present such a case
as will warrant a court of equity to award damages
thereunder?

We think that the above propositions enter into the
proper solution of the cause, and shall discuss them in
the order set out above. While we recognize the ef-
fect of the finding of a chancellor of the facts in a case,
to-wit, that it has the same force as the verdict of a jury
when heard on appeal, yet the further fact that it is not
unknown to this court that where such is the case, yet the
court can, in a proper case, find otherwise, gives us
ground to question the soundness of such finding. Even
counsel, having assailed such findings, gives us other rea-
sons for doing so. This court cannot know, whether or
not, appellees would have made the contract, as appel-
lant understood it. Appellees contend that it expressed
their understanding thereof. Courts cannot make con-
tracts for parties. Instruments can only be reformed,
where they do not express the actual intentions of the
parties. *Wise* v. *Brooks,* 69 Miss. 895; *Kerr* v. *Kuyken-
dall,* 44 Miss. 139; *Dunbar* v. *Newman,* 46 Miss. 237;
Bisphams Principles of Equity (7 Ed.), sec. 646; 34 Cyc.
p. 905, pt. of note "A." In the late case of *Butterfield
Lumber Co.* v. *Guy,* 92 Miss. 376, 377, this court, speak-
ing through Justice Mayes, says: "There is no law re-
stricting the right of all persons to make contracts to
suit themselves, when the contract violates no principle
of law. The safety of commercial transactions depend
upon this. Should courts undertake, because of im-
providence, to set aside contracts which are lawful, they
would invade personal rights and disturb and destroy
the safety of business tranascitons. Where parties have
made contracts in language leaving on doubt as to the
intention then there is no ground for the interference

by the courts, but the contracts must be enforced as written.''

In 65 Am. Reports, on page 482, under the authorities collated under note "Reformation of Contracts" at the bottom of page 282, it is said "that the proposition which lies at the foundation of all suits to reform is, that the court cannot make such a contract as it thinks the parties ought to have made, or would have made if better informed, but merely makes as the parties intended it should be."

At page 485 of the same authority, second paragraph thereon, it is said "while courts of chancery will, upon proper proof of fraud, accident or mistake, or surprise, raise an equity by which an agreement of the parties will be rectified, it will not interfere where the instrument is such as the parties themselves designed it to be. If they voluntarily choose to express themselves in the language of a written contract, they must be bound by it, for there is no general rule better settled, or more just in itself, than, that parties who enter into contracts, and especially contracts in writing, must be goverened by them as made, according to the true intent and meaning, and must submit to the legal consequences arising from them."

In the case of *Miles* v. *Miles,* 84 Miss. 637, the court speaking through Judge Truly uses this significant language: "An ancient and unquestionable jurisdiction of a court of equity is to grant a relief on account of a mistake of facts in written contracts whether executed or executory, if the writing expresses something of substance variant from what the parties actually intended."

This can mean only one thing, that is, it is the very back bone of this equitable power, that the parties must have intended to execute the contract as re-formed, but the court can grant the relief prayed for.

SMITH, J., delivered the opinion of the court.

It is manifest from the evidence that the contract, as written, did not express the agreement of the parties,

and that its failure so to do was caused by the fraudulent conduct of appellees. This, we understand, was the view taken of it by the chancellor in the court below; but he erred in holding that it constituted such a "speculative venture" as to warrant a court of equity in declining to grant the relief prayed for. The contract simply provides for a sale of personal property, delivery to be made at a future date. It is speculative only in the sense that all such contracts are speculative, and not in the sense that such contracts are condemned by the law.

The decree of the court below will be reversed, and decree here reforming the contract in accordance with the prayer of the bill, and awarding appellee damages in the amount prayed for.

ANDERSON, J., took no part in the consideration of this case.